# IN THE COURT OF APPEALS OF IOWA

No. 23-0236
Filed May 8, 2024


**FOX PRAIRIE INVESTORS, LLC, FOX PRAIRIE PLAZA SOUTH BUILDING OWNERS ASSOCIATION, FOX PRAIRIE NORTH BUILDING OWNERS ASSOCIATION,**
    Plaintiffs-Appellants,

**vs.**

**WALTERS COMPANIES, INC.,**
    Defendant-Appellee.

_____


Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.


Plaintiffs appeal the district court's grant of summary judgment dismissing their breach-of-contract claims. **AFFIRMED.**


Jeffrey A. Stone and Jacob W. Nelson of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellants.

Chris C. White and Rene Charles Lapierre of Klass Law Firm, L.L.P., Sioux City, for appellee.


Heard by Bower, C.J., and Schumacher and Langholz, JJ.

**LANGHOLZ, Judge.**

This is a curious contract case. Plaintiffs—who we will refer to collectively as the Fox Prairie Owners—are some current owners of a commercial and residential development called Fox Prairie Plaza. They allege the development was built defectively and want the original developer and general contractor—Walters Companies, Inc.—to pay their damages caused by the defects. But they did not buy their property from Walters or hire Walters as their construction contractor. So instead, the Fox Prairie Owners claim a right to recovery because Walters breached a contract it allegedly made with itself—in essence, a promise not to build itself defective buildings—and they then obtained a right to enforce one end of that contract against Walters through a series of assignments.

The district court granted Walters summary judgment, holding that the breach-of-contract claim failed for a host of reasons. The Fox Prairie Owners appeal, arguing that all those reasons are wrong on the merits and that some should not have even been considered because of procedural failures by Walters in raising them. We could fill many pages resolving all the admittedly interesting issues presented to us by the parties. But if any one of the logical piers supporting the bridge of liability from Walters to the Fox Prairie Owners is defective, their case collapses. And on our inspection, we agree with the district court on one issue that Walters without a doubt properly raised: there is no material factual dispute that Walters ever assigned away any purported contract right against itself. So without the support of a valid assignment, the Fox Prairie Owners cannot sue for a breach of that alleged contract—even if they could prevail on all their other arguments. We thus affirm the district court's grant of summary judgment to Walters.

I.

Walters originally owned and developed Fox Prairie Plaza, a mixed-use condominium property in West Des Moines with retail stores on the first floor and residences on the upper floors. In 2005, Walters began construction of the buildings that would become the Plaza. The Fox Prairie Owners allege that around this time, Walters entered into a written construction contract with itself in two separate roles—one as the owner and the other as contractor. They contend that this contract required Walters—as contractor—to construct the Plaza for Walters— as owner—according to proper plans and specifications and following applicable building codes. No party submitted the alleged written contract to the district court. But the president of Walters agreed in his deposition testimony that there was a written construction contract and that it would have included at least those terms.

*Walters and Valley Bank.* Walters got a loan from Valley Bank for the project. This transaction was supposed to include three relevant parts: (1) a construction loan agreement; (2) a mortgage, security agreement, and fixture financing statement; and (3) an assignment of general contractor's agreement. The first two parts were executed. But the last—which would have conditionally assigned Walters's right to enforce the construction contract against itself to Valley Bank—was not. An unsigned copy of the assignment was submitted to the court. And Walters's president testified that he was unaware of any signed assignment.[1]

---

[1] An employee of Great Southern Bank—which was not a party to the transaction— said "[u]pon information and belief" that Walters and Valley Bank both "agreed to, signed, and executed" the assignment. But this affidavit gets no weight as "'[u]pon information and belief' is a lawyerly way of saying that the [affiant] does not know that something is a fact but just suspects it or has heard it." *Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377, 387 (3d Cir. 2020).

The loan agreement between Walters and Valley Bank—which *was* properly executed—provided that Valley Bank would loan up to $14.5 million to Walters for the construction of Fox Prairie Plaza. It provided that the loan would be secured by the mortgage, security agreement, and fixture financing statement. And while it listed several other loan documents that Walters was required to execute, the assignment of general contractor's agreement is not included or otherwise mentioned in the agreement.

Consistent with the promise in the loan agreement, the mortgage, security agreement, and fixture financing statement gave Valley Bank a mortgage on the real estate that would become the Fox Prairie Plaza. It also granted "a first and prior security interest and all of [Walters's] right, title and interest in, to and under the Personalty, Fixtures, Leases and Rents, in trust, to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations." The mortgage defined the covered "Personalty" as all of Walters's interest

> in and to all furniture, furnishings, equipment, appliances, machinery, goods, general intangibles, money, accounts, contract rights, inventory and all other personal property (other than the Fixtures) of any character as defined in and subject to the provisions of the Uniform Commercial Code of Iowa, as amended, now or hereafter located upon, within or about the Premises and the Improvements, or used in connection with the operation, use or occupancy of the Project.

In late 2007—less than two years after signing the loan agreement— Walters defaulted on its payment obligations under the agreement. Rather than starting foreclosure proceedings, Valley Bank and Walters executed an alternative nonjudicial voluntary foreclosure agreement. *See* Iowa Code § 654.18 (2007). In

the agreement, Walters agreed to convey all its mortgaged interest in the Fox Prairie Plaza real estate by a quitclaim deed at the same time it executed the agreement. Walters also agreed, "To the extent Walters owns any equipment, furniture, furnishings or other personal property in or on the Properties, Walters will execute and deliver to Valley Bank a Bill of Sale conveying all such personal property to Valley Bank." And in return, Valley Bank accepted the real estate conveyed and "waive[d] its right to a deficiency judgment or other claim against [Walters], or any personal guarantor or other party, arising from the Note[] and Mortgage[]."

As required by the agreement, Walters executed the quitclaim deed conveying the Fox Prairie Plaza real estate to Valley Bank on the same date as the agreement. But there is no evidence in the record of any bill of sale conveying personal property from Walters to Valley Bank.

*The Chain of Transactions after Valley Bank.* About five months later, Valley Bank agreed to sell its "right, title and interest" in the Fox Prairie Plaza real estate to Hubbell Realty Company. The agreement also included Valley Bank's "right, title and interest in all personal property owned by [Valley Bank] and used in the operation of" the Fox Prairie Plaza. Over the next three months, Hubbell and Valley Bank made six amendments to the agreement, the details of which are not relevant here. And then, Hubbell assigned its "right, title and interest under that certain Purchase Agreement" to Fox Prairie Investors, LLC—which is one of the entities making up the Fox Prairie Owners.[2]

---

[2] Hubbell is also the managing member of Fox Prairie Investors, LLC.

Several years after Valley Bank's sale of its interest in the Fox Prairie Plaza, Great Southern Bank bought the assets of Valley Bank. And still years later—after this lawsuit was filed by Fox Prairie Investors and the other Fox Prairie Owners—Great Southern Bank made a second assignment to Fox Prairie Investors "[t]o avoid any doubt about the assignment of the Construction Contract" Walters allegedly made with itself. In this assignment, Great Southern Bank assigned "the entirety of [its] right, title, interest and obligation in and to the Construction Contract, including without limitation cause in action or chose in action arising out of the Construction Contract."

Fox Prairie Investors soon assigned its interest in Walters's alleged construction contract with itself to the two condominium associations that own the common elements of each of the buildings comprising the Fox Prairie Plaza. Those assignments largely mirrored the language of Great Southern Bank's assignment, assigning the part of Fox Prairie Investor's "right, title, interest and obligation in and to the Construction Contract with respect to" each association's common elements, "including without limitation cause in action or choice [sic] in action arising out of the Construction Contract."

*The Alleged Construction Defects.* Beginning in 2018, the Fox Prairie Owners discovered problems with their balconies and roofs that they believe are caused by defects in Walters's original construction of the buildings. According to later investigation, the attic was built without adequate ventilation, causing condensation that damaged the roof, attic, and residences below. And the balcony or patio screens caused water to collect and damage the screen structures. These issues required replacing the roof and the screens.

*This Proceeding.* In November 2020, the Fox Prairie Owners[3] sued Walters for breach of contract. They claimed that Walters breached the contract for construction of the Fox Prairie Plaza "by not complying with the plans and specifications and applicable building codes" and that the breach caused them damage. They also claimed that Walters "assigned the construction contract to Valley Bank, which in turn assigned the construction contract to Hubbell Realty, which in turn [as]signed the construction contract" to the Fox Prairie Owners. The petition did not allege that Walters made the construction contract with itself or provide any other detail about who Walters contracted with.

Walters answered the suit by denying any breach of contract or damage from the breach. And among other affirmative defenses, it asserted that "[t]hese plaintiffs were never in privity of contract with the defendant and therefore their claim is barred." Walters did not assert an affirmative defense that the construction contract was void because it was not a contract between two parties.

The Fox Prairie Owners moved to transfer the case to the Iowa Business Specialty Court.[4] And over Walters's objection, the motion was granted, and the case was specially assigned to a business court judge.

About two years into the litigation, Walters moved for summary judgment, arguing that the Fox Prairie Owners' breach-of-contract claim failed because they never contracted with Walters and there was no evidence of a valid assignment of

---

[3] Plaintiffs include Fox Prairie Investors, LLC, Fox Prairie South Building Owners Association, and Fox Prairie North Building Owners Association.

[4] *See* Iowa Judicial Branch, *Iowa Business Specialty Court*, https://www.iowacourts.gov/iowa-courts/district-court/iowa-business-specialty-court (last visited May 3, 2024).

any contract right against Walters to the Fox Prairie Owners.[5] In resistance to Walters's motion, the Fox Prairie Owners fleshed out their breach-of-contract theory. They argued that "Walters Companies as Borrower/Owner/Developer entered into a written construction contract . . . with Walters Companies as contractor" to build the Fox Prairie Plaza. And they contended that "Walters, as Borrower" assigned its "chose in action against Walters as Contractor," under the construction contract "to Valley Bank in at least four ways." They pointed to (1) the assignment of general contractor's agreement; (2) the construction loan agreement between Walters and Valley Bank; (3) the real estate mortgage, security agreement, and fixture financing statement; and (4) the alternative nonjudicial voluntary foreclosure agreement.

The Fox Prairie Owners also argued that the chain of assignments to them was completed in two ways. First, by the purchase agreement between Valley Bank and Hubbell Realty, and then the assignment from Hubbell Realty to the Fox Prairie Owners. And second, by an assignment directly from Valley Bank's successor—Great Southern Bank—to the Fox Prairie Owners. Finally, they argued that Valley Bank did not waive its assigned contract rights in the alternative nonjudicial voluntary foreclosure agreement.

With its target better illuminated, Walters argued in reply that it never "assigned the right of an 'action or chose in action' against Walters to Valley Bank," so "Valley Bank could not assign an 'action or chose in action' to any of its

---

[5] Walters also argued that any claim would be barred by the five- or ten-year statute of limitations for claims on oral and written contracts respectively. *See* Iowa Code § 614.1(4)–(5) (2020). But Walters abandoned this argument on appeal.

successors in interest." Walters highlighted that there was no evidence that the assignment of general contractor's agreement was ever signed. And it targeted other links in the alleged chains of assignments. Walters also questioned the Fox Prairie Owners' theory that it contracted with itself giving "Walters rights to bring suit against Walters," asking "Why would Walters ever bring suit against Walters?"

Four days later, Walters filed a supplemental reply that directly argued that any alleged contract with itself "would be void and unenforceable" because "there must be at least two parties to a contract." The Fox Prairie Owners sought to strike the supplemental reply because they contended it raised a new issue for the first time in reply. The district court denied the request but permitted the Fox Prairie Owners to file a sur-reply, in which they argued that "Walters can enter into a contract with itself in two separate capacities." They also alternatively argued that even if the contract is void, Walters would still be liable to Valley Bank based on promissory estoppel and they obtained a right to enforce that promise through the chain of assignments from Valley Bank.

The district court granted Walters's motion for summary judgment, holding that the Fox Prairie Owners' breach-of-contract claim failed for many reasons. First, the court held that the construction contract was void because it "had only one party: Walters" and one party cannot contract with itself. And the court explained that any of the alleged assignees—including the Fox Prairie Owners— thus "acquired nothing." The court also rejected the Fox Prairie Owners' belated theory of promissory estoppel, reasoning that they had not pleaded it in their petition nor presented any evidence of any "promise beyond the purported Construction Contract."

Alternatively, the court held that even if there had been a valid contract or other enforceable promise, the Fox Prairie Owners had failed to present evidence showing a complete chain of assignments from Walters to them of a right to enforce the contract or promise. The court reasoned that there was no evidence that the assignment of the general contractor's agreement was ever signed by Walters or Valley Bank. And it looked to the text of other alleged assignments—the alternative nonjudicial voluntary foreclosure agreement and the purchase agreement between Valley Bank and Hubbell—and concluded that they did not cover the right to enforce any construction contract or promise.

After the Fox Prairie Owners moved for reconsideration and enlargement under Iowa Rule of Civil Procedure 1.904, the court also rejected the Fox Prairie Owners' argument that the mortgage, security agreement, and fixture financing statement could be a valid assignment of Walters's contract right to Valley Bank. Again, the court looked to the text of the assignment provision in the mortgage and concluded that it did not cover any rights in the construction contract.

While the court agreed with the Fox Prairie Owners that Walters should have pleaded its theory that the construction contract with itself was void as an affirmative defense, the court declined to revisit its holding agreeing with Walters on that basis. The court reasoned that the Fox Prairie Owners were also late in making this argument in a reconsideration motion rather than in their briefing in response to Walters. And since the court would have let Walters amend its answer if the issue had been raised while the motion was still pending, the court deemed the answer to have been amended. The court also declined to permit the Fox Prairie Owners to amend their petition to assert an alternative promissory estoppel

claim. It reasoned that doing so would be futile given the lack of any valid chain of assignments to the Fox Prairie Owners and because Valley Bank would have waived any promissory estoppel claim in the alternative nonjudicial voluntary foreclosure agreement. The Fox Prairie Owners appeal.

II.

We review the grant of summary judgment for correction of errors at law. *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 528 (Iowa 1995). Under Iowa Rule of Civil Procedure 1.981, the district court must grant a motion for summary judgment when the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). In resisting summary judgment, the nonmoving "party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5).

"Summary judgment is not a dress rehearsal or practice run for trial but rather the put up or shut up moment in a lawsuit, when a nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Buboltz v. Birusingh*, 962 N.W.2d 747, 754–55 (Iowa 2021) (cleaned up). "And if, after considering all that evidence in the light most favorable to the nonmoving party, no reasonable mind could differ on how the factual issues should be resolved—and the law applied to those facts compels judgment for the moving party—summary judgment must be granted." *In re Est. of River*, ___ N.W.3d ___, 2024 WL 108884, at *3 (Iowa Ct. App. 2024).

The district court held that the Fox Prairie Owners' breach-of-contract claim fails because (1) any contract made by Walters with itself is void; (2) there is no evidence of a proper assignment of the contract by Walters to Valley Bank; (3) any such assigned claim was waived by Valley Bank; and (4) the purchase agreement between Valley Bank and Hubbell did not cover any assigned claim. The Fox Prairie Owners first challenge the district court's holding that the alleged contract between Walters as owner and Walters as contractor is void both on procedural grounds and on the merits. They again argue that the court should not have considered Walters's voidness argument because Walters did not plead the affirmative defense and made the argument too late in its supplemental reply brief. And they contend that the court erred in not allowing them to amend their petition to assert a promissory estoppel claim instead if the court accepted the late voidness argument. On the merits, they argue that a party can contract with itself if it does so in two different capacities, which it contends Walters did—as owner and as contractor. Alternatively, they contend that "any defect in the contract was eliminated when Walters assigned it to Valley Bank." And finally, they argue that even if the contract "is invalid, Walters is estopped from denying its enforceability."

But we need not wade into this cascading series of issues flowing from the district court's ruling that any contract by Walters with itself is void. Even assuming that Walters made an enforceable contract with itself, the district court also held that Walters did not assign away its right to enforce the contract. And this ground independently defeats the Fox Prairie Owners' breach-of-contract claim. Because without a valid assignment of the contract from Walters to Valley Bank, neither Valley Bank, nor Hubbell, nor Great Southern Bank could assign a right to enforce

the contract to the Fox Prairie Owners. *See Roberts v. Austin Corbin & Co.*, 26 Iowa 315, 327 (1869) ("[T]he assignee stands in the shoes, and only succeeds to the rights, of the assignor."). And without an assigned right to enforce the contract, the Fox Prairie Owners are strangers to Walters's contract with itself and cannot seek to enforce it. *See Davis v. Clinton Water-Works Co.*, 6 N.W. 126, 127 (Iowa 1880) ("It is a rule of law, familiar to the profession, that a privity of contract must exist between the parties to an action upon a contract.").

We thus focus on whether the Fox Prairie Owners have presented any evidence from which a jury could conclude that Walters assigned a right to enforce the alleged construction contract against Walters to Valley Bank. A party to a contract may assign its right to enforce the contract. *See Red Giant Oil Co.*, 528 N.W.2d at 533 ("Choses in action whether for breach of contract or for tort are assignable in this state."). And since an assignment is itself "a contract between the assignor and assignee," we determine its existence and scope like any written contract, based on "the intent of the parties." *Broyles v. Iowa Dep't of Soc. Servs.*, 305 N.W.2d 718, 721 (Iowa 1981). In doing so, we must "give effect to the language of the entire contract of assignment in accordance with commonly accepted and ordinary meaning." *Id.* at 721–22.

While the Fox Prairie Owners pointed to a few potential assignments in the district court, on appeal they argue only that Walters made the assignment to Valley Bank in the mortgage, security agreement, and fixture financing statement. They rely on a provision saying that the mortgage "does Grant, Bargain, Convey, Assign, Transfer and Set Over, unto [Valley Bank] a first and prior security interest and all of [Walters's] right, title and interest in, to and under the Personalty . . . in

trust, to secure the full and timely payment of the Indebtedness" and performance of Walters's other obligations under the mortgage and loan agreement. And they note that the mortgage defines "Personalty" to included Walters's "right, title and interest . . . in and to all . . . general intangibles, . . . contract rights, . . . and all other personal property . . . now or hereafter located upon, within or about the Premises and the Improvements, or used in connection with the operation, use or occupancy of the Project."

The district court held that the mortgage did not assign Valley Bank a right to enforce Walters's contract with itself. And we agree. True, the mortgage provision could create a security interest in the right to enforce some contracts given the express inclusion of "contract rights" and "general intangibles" within its definition of personalty. *See* Iowa Code § 554.9102(1)(as) (defining "[g]eneral intangible" to "includ[e] things in action"). But even assuming the provision covers the right to enforce Walters's contract with itself, the provision could only give Valley Bank "a first and prior security interest" in that contract right. The assignment "of right, title and interest" in any such contract right was merely "*in trust*, to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations." (Emphasis added.) So the mortgage did not itself give Valley Bank the right to enforce the construction contract against Walters.

Under the mortgage, until Walters defaulted, Valley Bank had no right to possess any of the collateral securing its loan to Walters—including the right to enforce Walters's construction contract with itself. *See* Iowa Code § 554.9609 (providing under the uniform commercial code that "*[a]fter default*, a secured party

. . . may take possession of the collateral . . . pursuant to judicial process; or . . . without judicial process, if it proceeds without breach of the peace" (emphasis added)). In other words, the mere execution of the mortgage did not give Valley Bank the right to sue Walters for some breach of the construction contract any more than it gave Valley Bank the right to possess the land and exclude Walters from any construction work on Fox Prairie Plaza. The grant of a security interest—the only interest in any contract right granted by the mortgage—is not the same as the absolute assignment of the contract right itself. *Cf. Arbie Min. Feed Co. v. Farm Bureau Mut. Ins. Co.*, 462 N.W.2d 677, 680 (Iowa 1990) (explaining the related process of levying on a breach-of-contract chose in action and noting that even after obtaining a perfected lien on the action, the final step before prosecuting the claim would be to have "had it assigned" to the levying party).

The Fox Prairie Owners insist that Valley Bank immediately got a right to enforce Walters's contract with itself directly from the execution of the mortgage and we do not need to look elsewhere for a later assignment. But since we disagree, in fairness to the Fox Prairie Owners, we do consider whether the record shows any evidence that Valley Bank exercised its right to claim an assignment of any secured contract right upon Walters's default.

Recall, Valley Bank chose to enforce its rights under the mortgage with an alternative nonjudicial voluntary foreclosure agreement rather than a judicial foreclosure proceeding. *See* Iowa Code § 654.18 (2007). In that agreement, Valley Bank "waive[d] its right to a deficiency judgment or other claim against [Walters], or any personal guarantor or other party, arising from the Note[] and Mortgage[]" in return for Walters's agreement to simultaneously convey all its

mortgaged interest in the Fox Prairie Plaza real estate by a quitclaim deed. And the summary judgment record shows that Walters did indeed execute a quitclaim deed conveying the Fox Prairie Plaza real estate to Valley Bank on the same date as the agreement. But the quitclaim deed only conveyed the "described real estate"—the land and buildings on it—not any intangible contracts rights secured by the mortgage.

The alternative nonjudicial voluntary foreclosure agreement did include another provision dealing with some of the personal property securing the mortgage. Walters agreed, "To the extent Walters owns any equipment, furniture, furnishings or other personal property in or on the Properties, Walters will execute and deliver to Valley Bank a Bill of Sale conveying all such personal property to Valley Bank." But this provision also cannot be an assignment of the contract right for two reasons. First, it only covers "personal property in or on" the Fox Prairie Plaza. It thus does not cover intangible personal property, like the right to enforce Walters's contract with itself. Second, like the mortgage, this provision does not itself make any assignment. It merely requires Walters to make the transfer by "execut[ing] and deliver[ing] to Valley Bank a Bill of Sale conveying all such personal property to Valley Bank." By the agreement's terms, the bill of sale—not the agreement—would convey any contract right from Walters to Valley Bank. And the Fox Prairie Owners submitted no such document to the district court. Nor have they presented any other evidence that Walters conveyed a right to enforce Walters's contract with itself because of Walters's default or the alternative nonjudicial voluntary foreclosure agreement.

Bottom line, because the Fox Prairie Owners fail to show a material factual dispute that Walters ever assigned away any rights under its alleged contract with itself, their claim for breach of that contract collapses.  The district court correctly granted Walters summary judgment on this ground.  And so, we need not consider the Fox Prairie Owners' challenges to the court's alternative grounds.

**AFFIRMED.**