Present: Carrico, C.J., Compton, Stephenson, Lacy, Keenan, and
Koontz, JJ., and Poff, Senior Justice

SANDRA T. PARRISH

v.  Record No. 950044

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
NOVEMBER 3, 1995

E. ANN JESSEE, ETC.

FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
F. Ward Harkrader, Jr., Judge

This appeal arises out of an action filed by the present guardian of a person under a disability challenging a prior court-approved settlement agreement entered into on behalf of that person by a former guardian.  The present guardian sought to void the settlement in part in the circuit court with supervisory jurisdiction over her guardianship more than a year after the settlement had been approved by another circuit court which had jurisdiction over the underlying tort claim.

On August 9, 1985, Douglas Parrish (Douglas) was catastrophically injured and rendered incompetent in an automobile accident.  For purposes of this appeal, it is conceded that the driver of the other vehicle, a cement truck owned by Mega Contractors, Inc. (Mega Contractors) was at fault.  Sandra T. Parrish (Parrish), Douglas' wife, was at the time pregnant with the couple's only child, Alicia, who was born less than a month after her father's accident.

On October 18, 1985, the Circuit Court of Goochland County (the Goochland court) appointed Parrish as guardian for Douglas.  In May of the following year, Parrish, in her capacity as guardian for Douglas, filed suit for damages resulting from his

injuries against Mega Contractors in the Circuit Court of the City of Richmond (the Richmond court). The parties reached a compromise and submitted a settlement agreement to the Richmond court for approval pursuant to Code § 8.01-424. Incorporated into the motion for approval were exhibits detailing the proposed settlement, an agreement of assignment between Mega Contractors' liability insurance carrier and a long-term annuity assurer to fund the settlement, schedules of eleven deferred benefit funds, and a professionally prepared distribution plan on which the schedules had been based.

The Richmond court initially approved the agreement following an ore tenus hearing on July 28, 1987. At that hearing, the Richmond court had questioned whether it had the power to approve portions of the settlement which designated funds to be directed to payees for their sole benefit rather than to the guardian for the benefit of the disabled person. After considering argument of counsel, the Richmond court found that the settlement could include payment of funds to third parties, or jointly to the guardian of the person under a disability and a third party, in satisfaction of the obligations of the person under a disability to the third parties.

Although the Richmond court approved the payment of benefits to third parties as contemplated in the agreement, the benefit schedule attached to the agreement failed to designate payees. On August 24, 1987, the Richmond court, in order to "clarify" the July 28, 1987 order, entered an order which designated the classes of payees with respect to each category of benefits and

directed the parties to enter into an addendum in accord with the order.[*] The August 24, 1987 order and resulting addendum to the agreement specified payees and contingent payees for the various funds. The funds and their designated payees were as follows:

| Fund (effective 8/15/87 except as noted) | Payments/Total Value | Payee(s)/ Contingent Payee |
|---|---|---|
| A. Personal maintenance for Douglas A. Parrish | $2,500 monthly increasing at 3% compounded annually during his life/ Estimated value: $3,132,252 | Douglas A. Parrish's guardian/(no contingent payee) |
| B. Transportation (effective 8/15/89) | $500 monthly increasing at 3% compounded annually during his life/Estimated value: $579,008.69 | Douglas A. Parrish's guardian/(no contingent payee) |
| C. Support, care and medical maintenance for Douglas A. Parrish (effective 8/15/89) | | $9,042 monthly increasing at 4% compounded annually during his life/Estimated value: $13,765,964Douglas A. Parrish's guardian/(no contingent payee) |
| D. Intensive Rehabilitation | $15,000 monthly for two years/$360,000 | Douglas A. Parrish's guardian/Sandra T. Parrish |
| E. Housing Acquisition | $2,202 monthly for 20 years/$528,480 | Douglas A. Parrish's guardian and Sandra T. Parrish joint payees/Alicia K. Parrish |

---

[*]Although the Richmond court failed to so designate the order, it would appear that the intent was to correct its prior order nunc pro tunc. Moreover, because the parties do not contest the validity of the order on jurisdictional grounds as having been entered more than 21 days after the Richmond court entered its final order, we accept the validity of that order for purposes of this appeal.

| | | | |
|---|---|---|---|
| F. | Emergency (effective 7/15/88) | $40,000 annually for five years/$200,000 | Douglas A. Parrish's guardian and Sandra T. Parrish <u>joint payees</u>/Alicia K. Parrish |
| G. | Discretionary (effective 7/15/88) | $50,000 annually for five years (1988-1992), $50,000 (7/15/97), $100,000 (7/15/2002), $100,000 (7/15/2007), $200,000 (7/15/2012), $200,000 (7/15/2017)/ $900,000 | Douglas A. Parrish's guardian and Sandra T. Parrish <u>joint payees</u>/Alicia K. Parrish |
| H. | Personal maintenance for Sandra T. Parrish | $2,000 monthly for five years/$120,000 | Sandra T. Parrish/Alicia K. Parrish |
| I. | Medical costs for Alicia K. Parrish (effective 7/15/88) | $2,000 annually for 10 years/$20,000 | Alicia K. Parrish/Sandra T. Parrish |
| J. | Educational costs for Alicia K. Parrish (effective 7/15/2003) | $25,000 annually for four years/$100,000 | Alicia K. Parrish/Sandra T. Parrish |

An additional fund, established for the payment of legal fees, is not relevant to this appeal.

When Parrish received distributions from the "joint" funds, she was advised by counsel that one-half of the funds belonged to her individually and that one-half of the funds were to be administered by her as guardian for Douglas. During the period of her guardianship, Parrish received a total of $90,000 in disbursements from these funds, $45,000 of which she deposited into a guardianship account. The remaining $45,000 Parrish used or retained for her own benefit, including paying off the loan on her personal automobile, acquiring a housing lot, purchasing a certificate of deposit, and paying for the repair of her mother's

automobile.

On January 14, 1989, Parrish arranged to move Douglas into the home of his sister, E. Ann Jessee (Jessee). On March 17, 1989, the Goochland court entered an order granting Parrish's motion to substitute Jessee as guardian for Douglas. In the same order, the court directed that the payees of certain funds created by the settlement agreement were to be changed. The order permitted Parrish to continue receiving payments from the fund designated for her personal maintenance, but required that those payments which were jointly payable to Parrish and Douglas' guardian or to Parrish as Alicia's natural guardian would thereafter be paid to the court for administration. The order also directed that the court would become the contingent payee for all the funds except the fund for Parrish's personal maintenance. Jessee, as guardian, became the payee on those funds designated for Douglas' sole benefit.

On July 17, 1990, Parrish filed a motion in the Goochland court to vacate those portions of the March 17, 1989 order which modified the settlement agreement approved by the Richmond court. On July 25, 1990, Jessee filed a motion in the Goochland court to vacate as void certain portions of the approved settlement agreement. Jessee asserted that "[s]o much of the [Richmond court's] Order of July 28, 1987 as effected a diversion of the settlement proceeds . . . to persons other than Douglas A. Parrish [was] void as a matter of law." In support of this assertion, she cited Code § 8.01-424(D)(4) for the principle that where the settlement agreement "provides for payments to be made

over a period of time in the future . . . the court shall approve the settlement only if it finds that all payments which are due to be made are" properly secured by bond or are to be made by an insurance company and will be paid to the court in accord with Code § 8.01-606 or to a duly qualified fiduciary.

After extensive proceedings, the Goochland court entered a final order on October 11, 1994, in which it found that, since the benefits of the settlement agreement should have been vested in Douglas alone, the designation of payees other than Douglas' guardian was improper under Code § 8.01-424, and that all monies due under the agreement were to be delivered to Jessee as guardian or to the court. The Goochland court further ordered that Jessee was to pay child support to Parrish, pursuant to a motion filed by Parrish during the proceedings, with an offset of $45,000 for funds previously disbursed by Parrish for her personal use from payments made pursuant to the joint schedules. Parrish was further ordered to submit a final accounting of her guardianship to the Commissioner of Accounts. The Goochland court dismissed as "moot" Parrish's challenge to its original reformation of the agreement in its March 17, 1989 order.

On appeal, Parrish assigns error to the legal and factual determinations of the Goochland court and raises a challenge to its jurisdiction to set aside the provisions of the settlement agreement approved by the Richmond court. Jurisdiction is always a threshold issue. Where the lower court lacked jurisdiction to act, its actions are a nullity and not subject to substantive review. Accordingly, we first address Parrish's challenge to the

jurisdiction of the Goochland court with regard to the settlement agreement, which we find dispositive of the principal issues of this appeal.

Jessee's motion in the Goochland court sought relief on the ground that the Richmond court's order was, at least in part, void as a matter of law because the trial judge had not properly applied Code § 8.01-424.  The motion further asserted that the Goochland court had jurisdiction to consider the matter because of its supervision of Douglas' estate by appointment of the guardian and by the inherent power of any court to address the validity of a void judgment.  Assuming, without deciding, that the assertions of Jessee's motions are correct with respect to the application of Code § 8.01-424, we hold that the alleged errors would render the Richmond court's order merely voidable, and not void ab initio.

Under settled legal principles, a judgment is void ab initio only if it "has been procured by extrinsic or collateral fraud, or entered by a court that did not have jurisdiction over the subject matter or the parties."  Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987).  Otherwise a judgment is merely voidable and may be set aside only (1) by motion to the trial court filed within twenty-one days of its entry, Rule 1:1, (2) on direct appeal, Rook, 233 Va. at 95, 353 S.E.2d at 758, or (3) by bill of review, Code § 8.01-623, Blunt v. Lentz, 241 Va. 547, 550, 404 S.E.2d 62, 64 (1991).  "Judgments that are void [ab initio], however, may be attacked in any court at any time, directly or collaterally."  Rook, 233 Va. at 95, 353 S.E.2d at

758.

The validity of a judgment based upon a challenge to the application of a statute raises a question of trial error, and not a question of jurisdiction. Pflaster v. Town of Berryville, 157 Va. 859, 864, 161 S.E. 58, 60 (1931). See generally, M. L. Cross, Annotation, Validity and Effect of Judgment Based upon Erroneous View as to Constitutionality or Validity of a Statute or Ordinance Going to the Merits, 167 A.L.R. 517 (1947). "[I]f the inferior court has jurisdiction of the subject matter of the controversy, and the parties are before it, . . . a mistaken exercise of that jurisdiction does not render its judgment void." County School Bd. v. Snead, 198 Va. 100, 107, 92 S.E.2d 497, 503 (1956). "[T]he court has jurisdiction to err, as well as to correctly adjudicate the questions before it for decision, and the remedy to correct the errors of the court is solely by appeal." Farant Investment Corp. v. Francis, 138 Va. 417, 436, 122 S.E. 141, 147 (1924); see also Kiser v. W. M. Ritter Lumber Co., 179 Va. 128, 136, 18 S.E.2d 319, 322 (1942).

Jessee did not, and could not, allege a lack of jurisdiction in the Richmond court over the action brought by Parrish as guardian to recover for Douglas' injuries. Nor did she allege that the Richmond court's approval of the agreement resulting from that action was procured by collateral or extrinsic fraud. Rather, she challenged the Richmond court's application of Code § 8.01-424, pursuant to which it exercised its jurisdiction. Thus, Jessee's allegations submit an issue not of a void judgment, but of one merely voidable. The judgment of the

Richmond court was not subject to collateral attack in the Goochland court; thus, Jessee's motion was improvidently considered therein and the judgment on the merits in the Goochland court thus rendered is null and void. Morrison v. Bestler, 239 Va. 166, 170, 387 S.E.2d 753, 755-56 (1990); Rook, 233 Va. at 95, 353 S.E.2d at 758.

Whatever remedy Jessee, in her capacity as guardian, might pursue in law or equity against Parrish, the proper course was not to challenge, in a court of equal dignity, a judgment of a court of competent jurisdiction on the ground that it had unsatisfactorily discharged its judicial duty. Accordingly, we will vacate the Goochland court's October 11, 1994 order with respect to Jessee's challenge to the Richmond court's approval of the settlement agreement.

We turn now to Parrish's further assertions that the Goochland court erred in mooting her challenge to its reformation of the agreement in the March 17, 1989 order appointing Jessee as Douglas' guardian. Parrish asserts that those schedules which designated payment jointly to Douglas' guardian and to Parrish individually, were intended for their individual support and maintenance and that she is entitled to continue receiving direct payment of a portion of those payments despite being displaced as guardian and relinquishing physical custody of Douglas. We disagree.

The Goochland court's control over Douglas' estate derives from its power to appoint and supervise guardians for a person under a disability within its jurisdiction. See Code § 37.1-132

(authorizing appointment of guardians for persons under mental or physical disability and requiring them to serve under control of the court in accord with rules for trustees found in Title 26 of the Code of Virginia). Funds payable under the agreement for the benefit of Douglas, whether individually or jointly, are part of his estate and, thus, properly within the Goochland court's control as they become due and payable.

Contrary to the advice Parrish received from legal counsel, joint payees are not automatically entitled to an equal division of payments made to them. Their rights are determined by the instrument which created the obligation to them. Here, the settlement agreement clearly designated the nature of the joint funds as being for "housing acquisition," "emergency" needs, and "discretionary" spending for the common benefit of Douglas, his wife and, ultimately, his child. The separate needs of each of these parties were addressed by other funds. Accordingly, while Parrish may have a continuing interest in the joint funds <u>with respect to their intended uses</u>, she has no automatic right to receive a set percentage thereof for her general support and maintenance.

Moreover, a party to a joint payment has a duty to preserve for joint benefit any payment entrusted to him or her individually. <u>See</u> <u>Cooper v. Cooper</u>, 249 Va. 511, 517, 457 S.E.2d 88, 91-92 (1995) (where one party acquires adverse interest in joint property, constructive trust for benefit of other party results in order to avoid unjust enrichment); <u>see also</u> <u>Leonard v. Counts</u>, 221 Va. 582, 589-90, 272 S.E.2d 190, 195-96 (1980); <u>Horne</u>

v. Holley, 167 Va. 234, 240, 188 S.E. 169, 172 (1936).  We hold that the Goochland court properly exercised its power to protect Douglas' estate and to assure that the joint funds were not dissipated or used for purposes other than those intended by the agreement.  By directing that these particular funds be paid to the court, the court did not terminate Parrish's interest in the funds.  Rather, these funds remain available both to Parrish and to Douglas' guardian according to their future needs as determined by the court, or a trustee designated by the court, consistent with the designated purposes for the funds as contemplated by the settlement agreement.  Under the regrettable circumstances of this case, this action was necessary in order to assure that Douglas' estate was adequately preserved for the mutual benefit of himself, his wife, and his child.

We do find fault with one component of the March 17, 1989 order.  The payments specifically designated in the settlement agreement for the benefit of Alicia with payment to her mother as natural guardian are not properly part of the estate of the person under a disability.  Accordingly, absent some showing, in this or another proceeding, that Parrish has been divested of or has abused her statutory capacity as natural guardian, Code § 31-1, she remains the proper person to receive these payments and to be the contingent payee for those funds.

In summary, we hold that the Goochland court lacked jurisdiction to void any portion of the approved settlement agreement through its October 11, 1994 order; insofar as it attempted to do so, that order is a nullity and will be vacated.

Other issues addressed in the October 11, 1994 order were properly before the Goochland court in its role as overseer of Douglas' estate. Specifically, the award of child-support payments to Parrish and the finding of an offset to that support for her diversion of monies from the joint funds for her exclusive benefit was proper. Finally, the Goochland court's order directing payment of the joint funds to the court for supervision was a proper exercise of its chancery power under the circumstances of this case, although it was not proper to direct payment of the funds intended for Alicia's exclusive benefit other than to her natural guardian.

<u>Affirmed in part,
reversed in part,
and final judgment</u>.

SENIOR JUSTICE POFF, with whom JUSTICE STEPHENSON joins, dissenting.

I dissent from the decision reached by the majority.

This Court has consistently held that judgments and orders may be valid in part and void in part. <u>See</u>, <u>e.g.</u>, <u>Barnes</u> v. <u>American Fert. Co.</u>, 144 Va. 692, 714, 130 S.E. 902, 909 (1925); <u>White</u> v. <u>Palmer</u>, 110 Va. 490, 496, 66 S.E. 44, 46 (1909); <u>Wade et als.</u> v. <u>Hancock and Agee</u>, 76 Va. 620, 625-26 (1882). In her Motion for Partial Vacation filed at trial, Jessee contended that the Richmond court's order approving the compromise settlement was, <u>in</u> <u>part</u>, "void as a matter of law." The majority rejects that contention.

Specifically, the majority holds that Jessee's action in the Goochland court was merely a challenge to the Richmond court's

application of Code § 8.01-424; that misapplication of that statute "would render the Richmond court's order merely voidable, and not void"; that "the Goochland court lacked jurisdiction to void any portion of the approved settlement agreement"; and that "the judgment on the merits in the Goochland court . . . is null and void."  I agree with Jessee.

In its enactment of Code § 8.01-424 and its statutory ancestors, the General Assembly conferred upon courts of this Commonwealth jurisdiction they had not had before, that is, "power to approve" or "to disapprove a compromise" settlement reached by a tortfeasor and a victim of the tort.  Gunn v. Richmond Community Hospital, 235 Va. 282, 286, 367 S.E.2d 480, 482 (1988).

"It seems to be settled law, that where a new jurisdiction is created by statute and the mode of acquiring and exercising that jurisdiction by the court upon which it is conferred is prescribed by statute, a substantial compliance therewith, at least, is essential, otherwise the proceeding will be a nullity."  Cauthorn v. Cauthorn, 196 Va. 614, 621, 85 S.E.2d 256, 260 (1955), quoting Coleman v. Virginia Stave Co., 112 Va. 61, 75, 70 S.E. 545, 549 (1911).

In the exercise of the jurisdiction newly-created by Code § 8.01-424, courts are explicitly required by the leglislature to prescribe how the "proceeds of the compromise settlement" are to be paid.  Subsection D of the statute provides:

> D.  In any compromise action the court shall direct the payment of the proceeds of the compromise agreement, when approved, as follows:

. . .

4.  Where the agreement of settlement provides for payments to be made over a period of time in the future . . . [p]ayments . . . totaling more than $4,000 in any calendar year while the recipient is under a disability, shall be paid to a duly qualified fiduciary.

The language prescribing the mode of application of this statute is express and mandatory.  Any departure from the prescription is not merely a voidable "trial error" as the majority asserts.  "Where the court, as here, is exercising special statutory powers, the measure of its authority is the statute itself; and a judgment or order in excess of the powers thereby conferred is null and void.  In such a case, even though the court may have jurisdiction of the general subject matter and of the parties, an adjudication with reference thereto which is not within the powers granted to it is coram non judice."  Aetna Casualty Co. v. Supervisors, 160 Va. 11, 45, 168 S.E. 617, 626 (1925) (citations omitted).

In my view, while the Richmond court had jurisdiction to approve settlement of the rights and liabilities of the tortfeasor and the victim of the tort, it had no authority to "direct the payment of the proceeds of the compromise settlement" to anyone other than Douglas's "duly qualified fiduciary".  I would hold, therefore, that, to the extent the Richmond court exceeded its statutory authority, its order was void ab initio and, as such, was subject to attack "in any court at any time, directly or collaterally."  Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987).  Consequently, I would affirm the

judgment of the Goochland court, the court the majority

recognizes as the judicial "overseer of Douglas' estate."