544

## CIRCUIT COURT OF THE CITY OF ROANOKE

Patricia Beckner,
f/k/a Patricia A. Leftwich,
Administratrix of the Estate of
Goldie Christine Duncan

 v.

Twin City Fire Ins. Co. et al.

 Case No. CL01-642

Patricia Beckner,
f/k/a Patricia A. Leftwich,
Administratrix of the Estate of
Clyde M. Leftwich

 v.

Twin City Fire Ins. Co. et al.

 Case No. CL01-648

Patricia Beckner,
f/k/a Patricia A. Leftwich,
Administratrix of the Estate of
Nancy Renea Leftwich

 v.

Twin City Fire Ins. Co. et al.

 Case No. CL01-649

Patricia Beckner,
f/k/a Patricia A. Leftwich,
Administratrix of the Estate of
Patrick Wayne Leftwich

v.

Twin City Fire Ins. Co. et al.

Case No. CL01-650

Patricia Beckner,
f/k/a Patricia A. Leftwich,
Administratrix of the Estate of
Mark Leftwich, Jr.

v.

Twin City Fire Ins. Co. et al.

Case No. CL01-651

June 27, 2002

BY JUDGE JONATHAN M. APGAR

This lawsuit raises four primary questions: (1) whether the administratrix of these estates has standing to sue, (2) whether an assignment/covenant not to execute agreement is fraudulent and collusive, (3) whether the insurance companies are legally obligated to pay if the insured's assets are not at risk, and (4) whether the statute of repose bars the lawsuit involving one of the

defendants. The Court finds that the administratrix has standing to bring all cases. The Court denies the defendants' motions for summary judgment.

In five separate lawsuits, the plaintiff, Patricia Beckner, administratrix of the estates of five individuals, sued defendants Twin City Fire Insurance Company, Inc., Hartford Casualty Insurance Company, Inc., Discover Property and Casualty (formerly known as Northbrook National Insurance Company, Inc.), Northbrook Property and Casualty Insurance Company, Inc., James A. Scott & Son, Inc., L. H. Moore, Inc., and SunTrust Bank, successor to Crestar Bank and Crestar Mortgage Corporation. For ease of explanation, the Court will refer to these defendants as "Twin City," "Hartford," "Discover," "Northbrook," "Moore," "Scott" and "SunTrust." In response, defendants Twin City, Hartford, Discover, and SunTrust have moved for summary judgment.

A motion for summary judgment should not be granted if any material fact is genuinely in dispute. Rule 3:18. The Supreme Court of Virginia disapproves of the "grant of motions which 'short circuit' the legal process thereby depriving a litigant of his day in court and depriving [the Supreme Court] of an opportunity to review a thoroughly developed record on appeal." *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven, Ltd.*, 253 Va. 93, 95, 480 S.E.2d 471, 472 (1997) (citations omitted). "When a trial court considers a motion for judgment, it must adopt from the facts those inferences that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Aetna Casualty and Surety Co. v. Fireguard Corp.*, 249 Va. 209, 211, 455 S.E.2d 229, 230 (1995).

The plaintiff alleges that Moore was a property manager who collected rent of behalf of SunTrust. In turn, SunTrust agreed to indemnify and hold Moore harmless for any liability arising from Moore's management of properties, including 1228 Stewart Avenue, Roanoke, Virginia. Moore made repairs to a separation wall at that location. On January 20, 1996, a fire at that address killed five people: Beckner's four children and her mother, Goldie Duncan. Beckner qualified as administratrix and later sued Moore and others in a wrongful death action. Twin City and Hartford both issued policies which insured Moore against liability for bodily injury. Twin City and Hartford refused to defend and did not furnish Moore with a reservation of their rights to deny coverage. Twin City and Hartford did file a complaint in federal court for declaratory judgment, alleging that the policies did not provide coverage for the underlying state actions. The federal district court ruled that the case should be adjudicated in state court. No state court proceeding on this issue occurred.

Moore employed private counsel to defend it in the previous lawsuits. On October 22, 1999, Moore entered into a settlement agreement with the plaintiff. On November 4, 1999, this Court entered a judgment against Moore in the amount of $390,000 in each of the five lawsuits ("November order"). Moore in turn assigned to the plaintiff all rights, claims, and causes of action existing in its favor against Hartford and Twin City.

Furthermore, Discover insured SunTrust and that policy defined "insured" as "any person or organization acting as your real estate manager." Thus, the plaintiff claims that Moore was an "insured" under the Discover policy. Moore asked SunTrust and Discover to defend, and they denied coverage and issued no reservation of rights letter. Moore assigned its cause of action against Discover to the plaintiff.

In addition, the plaintiff alleges that SunTrust agreed to indemnify and hold Moore harmless for any liability incurred by Moore and that SunTrust refused to provide indemnification pursuant to that contract. Thus, the plaintiff claims that SunTrust breached the contract it had with Moore. Moore assigned its right to indemnity against SunTrust to the plaintiff for a consideration of $3,000 to be paid from proceeds of settlement with other alleged tortfeasors. SunTrust contends that the statute of repose bars this claim.

The plaintiff further contends that Moore's insurance agent failed to insure Moore against the risks of loss associated with its business. Scott has demurred and filed a special plea. This letter will not address those issues.

Beckner seeks to recover from Twin City, Hartford, Discover, and SunTrust under the respective insurance policies and contracts for the amount of each judgment in case numbers CL96-1022 through CL96-1026, for a total of $1,950,000.

The settlement agreement, made part of the record by plaintiff's admission, shows that Beckner entered into a contract with Moore. The plaintiff agreed to limit collection of the judgments to Twin City, Hartford, and Discover, as well as the former owner of the property. The agreement further provided for an assignment of rights:

> L. H. Moore, Inc., will convey unto the Estate its rights, title, and interest, whether legal or equitable or otherwise, in its claims of indemnity against Crestar Bank and Crestar Mortgage [SunTrust] and their successors in interest for the consideration of $3,000.00 to be paid to L. H. Moore, Inc., from the proceeds of the Estate's settlement with other alleged tortfeasors, provided further that to the extent that the Plaintiff pursues said claims, Plaintiff will include the claim, to the extent allowed by law, for attorney's fees incurred by L. H.

Moore, Inc., in regard to the defense of this case and, in any event, L. H. Moore, Inc., shall be entitled to the first $4,200 of any gross recovery by the Estate under this paragraph or under paragraph 3 above [assignments against other defendants] toward its incurred attorney's fees and costs to the date of the Court's approval of this settlement agreement. L. H. Moore, Inc., will thereafter share pro rata in any recovery with respect to any such attorney's fees and costs which remain unreimbursed.

The agreement also provided a covenant not to execute judgment:

In regard to the entry of judgment against L. H. Moore, Inc., it shall not be spread upon the docket book without further order of the Court and only then to effectuate collection of the judgment to the extent and under the terms of this agreement only if and as necessary to effectuate the purposes of this agreement, and in no event against the assets of L. H. Moore, Inc., t/a Moore & Company, or its officers, directors, or stockholders, except to the extent of those assets and rights of L. H. Moore, Inc., as enumerated in paragraphs 3 and 5 of this agreement.

### I. *Standing and Jurisdiction*

The defendants claim that Beckner as administratrix has no standing to bring this lawsuit. Twin City and Hartford argue that any amount collected would not be part of the estate of the decedents. Discover argues that, under Va. Code § 8.01-53(A), the plaintiff, as representative of the estates, lacks standing and, under Va. Code § 8.01-54(A), the November order is unenforceable because it does not set forth the amount or proportion of the judgment to be received by the beneficiaries. The plaintiff contends that the personal representative is the appropriate party and that the Court complied with those statutory provisions. The Court agrees.

The Court finds that the plaintiff has standing under Virginia § 8.01-13. *Kelly Health Care, Inc. v. Prudential Ins. Co.*, 226 Va. 376, 379, 309 S.E.2d 305, 307 (1983). As the plaintiff in the previous suits, she entered into the settlement agreement with Moore and Moore assigned its rights to the decedents' estates. Beckner is the assignee of Moore and steps into the shoes of Moore. Thus, she is asserting Moore's cause of action, not any claim of the statutory beneficiaries. In addition, the November order requires Beckner to hold the proceeds of any judgment in this case to be distributed by further

order of this court. Therefore, she is the proper party. *See Andrews v. American Health and Life Ins. Co.*, 236 Va. 221, 226, 372 S.E.2d 399, 402 (1988) (Standing requires that "a litigant have a 'sufficient interest in the subject matter of [a] case so that the parties will be actual adversaries and the issues will be fully and faithfully developed'.").

Furthermore, she was the proper person to bring the previous lawsuits under Virginia Code § 8.01-50 and she acted as the "surrogate for the beneficiaries of the cause of action named in Code § 8.01-53." *Horn v. Abernathy*, 231 Va. 228, 237, 343 S.E.2d 318, 323 (1986). Virginia Code § 8.01-53(A) lists each person who shall receive damage awards in a wrongful death action. Virginia Code § 8.01-53(B) provides that the class and beneficiaries "eligible to receive such distribution shall be fixed . . . (ii) at the time the judgment is rendered if the court specifies the distribution." Virginia Code § 8.01-54(A) provides in part:

> The verdict may and the judgment of the court shall in all cases specify the amount or the proportion to be received by each of the beneficiaries if there be any. No verdict shall be set aside for failure to make such specification.

"The validity of a judgment based upon a challenge to the application of a statute raises a question of trial error, and not a question of jurisdiction." *Parrish v. Jessee*, 250 Va. 514, 521, 464 S.E.2d 141, 145 (1995). Assuming the court failed to specify the amount to be received by the beneficiaries, failure to do so will not void the judgment. "[A] judgment is void *ab initio* only if it 'has been procured by extrinsic or collateral fraud, or entered by a court that did not have jurisdiction over the subject matter or the parties'." *Id*; *Singh v. Mooney*, 261 Va. 48, 541 S.E.2d 549 (2001). Clearly, this Court had jurisdiction over subject matter and parties in the wrongful death action. Thus, the November order is not void and unenforceable. As Moore has assigned its cause of action to Beckner, this Court has jurisdiction over the subject matter and parties in these lawsuits.

## II. *Fraud and Collusion*

The defendants contend that the settlement agreement and order of this Court are void because the plaintiff and Moore committed fraud or collusion. The plaintiff and the defendants both agree that absent fraud or collusion, or lack of jurisdiction, an insurance company cannot collaterally attack a

judgment entered by the parties to that lawsuit. *See* Va. Code §§ 8.01-8.01-431, 449.

The November order provided for a judgment against Moore and required Moore to perform all obligations of the settlement agreement. Further, the order provided that any proceeds acquired as a result of the settlement agreement would be held and distributed by further order of this Court. This Court expressly found that the amount of the judgment in each case was reasonable and in the best interest of the beneficiaries.

A consent judgment has "substantially the same effect as any other judgment rendered in ordinary course, and is entitled to the same presumptions." *Culpeper Nat'l Bank of Culpeper v. Morris*, 168 Va. 379, 385, 191 S.E. 764, 767 (1937).

The parties have cited the Virginia Supreme Court case, *Liberty Mut. Ins. Co. v. Eades*, 248 Va. 285, 448 S.E.2d 631 (1994), for support of the their respective positions. In that case, the jury trial "dealt with issues of insurance coverage and collusion." *Id.* at 288. The Court ruled that it was therefore limiting its decision to "whether the insurer properly could collaterally attack 'the reasonableness and prudence of the amount of a stipulated judgment entered into in another court proceeding' in which the insurer was not a party and did not participate in any way." *Id.* The Court held that the insurer's liability was fixed "unless fraud or collusion is shown in the procurement of the judgment." *Id.* at 289. A consent judgment, the Court explained, is valid and "not subject to collateral attack except upon jurisdictional grounds or for fraud or collusion." *Id.* at 288; *see Union Indem. Co. v. Small*, 154 Va. 458, 153 S.E. 685 (1930).

The defendants have argued that the agreement amounts to collusion because Moore will actually profit from any recovery and because the plaintiff paid Moore $3,000 for the assignment. Twin City and Hartford suggest that this arrangement will "result in manifest injustice to" them.

The defendants ask this Court to determine from the settlement documents that collusion existed. The facts in the *Eades* case are admittedly different from the facts in this case because in *Eades* the defendant assigned all rights and causes of action to the plaintiff after a consent judgment was entered. Here, the parties entered into the agreement prior to the consent judgment. This Court is unaware of any Virginia appellate case that addresses this particular issue. Thus, this is an issue of first impression in the Commonwealth.

Decisions in other jurisdictions and two law review articles provide guidance. Justin Harris, *Note, Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation*.

47 Drake L. Rev. 853 (1999) (hereinafter "Judicial Approaches"; Chris Wood, *Note, Assignments of Rights and Covenants Not to Execute in Insurance Litigation*, 75 Tex. L. Rev. 1373 (1997). The majority of jurisdictions hold that such agreements are not inherently collusive.

For example, in *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995), the insured notified his insurance provider of the lawsuit filed by Red Giant Oil against him. The provider denied coverage. The insured confessed judgment and assigned his rights to Red Giant, who in turn agreed not to execute on the judgment. The insured also loaned money to Red Giant and Red Giant agreed to pursue the claims against the provider and to repay the loan if successful. *Id.* at 526. The Court in *Red Giant* agreed with other courts which "hold that a claim by an insured against the insurer for failure of the insurer to defend may be assigned to the injured party. Prejudgment assignments, like the one here, in return for covenants not to execute are not inherently collusive or fraudulent." *Id.*

The facts of this case are somewhat different in that Moore will be reimbursed for his attorneys' fees and will receive $3,000 as consideration for the assignment. Cases from other jurisdictions which have approached this issue dealt with different facts as well. The Texas Supreme Court in *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996), dealt with a provider who agreed to defend and an insured who entered a consent judgment for $6 million in a sexual abuse case. The Court held that the assignment violated public policy. *Id.* at 697. Here, the insurance companies did not defend. In the federal district court case, *Spence-Parker v. Maryland Ins. Group*, 937 F. Supp. 551 (E.D. Va. 1996), the attorneys for the parties failed to advise the district court which entered the judgment that the settlement "was not the product of arms-length negotiation in an adversarial setting." *Id.* at 562. The plaintiff had set the judgment amount and the defendant's counsel "had no interest in the amount, nor any incentive to dispute it." *Id.* at 554. Thus, the Court found that the consent judgment was procured through constructive fraud on the court. *Id.* at 562. There is no evidence before the court in this case that the parties to the previous lawsuits did not engage in an arm's length negotiation. Through discovery, the defendants may unveil such evidence, but a motion for summary judgment cannot be granted on the court documents alone. *See also Hitt v. Cox*, 737 F.2d 421 (4th Cir. 1984) (conditional recovery patently unreasonable); *Continental Cas. Co. v. Westerfield*, 961 F. Supp. 1502 (D. N.M. 1997) (illusion of a trial amounted to collusion).

This Court agrees with the reasoning in *Red Giant* and finds that the assignment in this case was not inherently collusive or fraudulent. *E.g. Pruyn*

*v. Agricultural Ins. Co.*, 36 Cal. App. 4th 500, 42 Cal. Rptr. 2d 295 (Cal. Ct. App. 1995) (provider denied coverage and the insured negotiated settlement with plaintiff was upheld). The majority and minority viewpoints all highlight the importance of judicial oversight in these types of arrangements to avoid bad faith by the parties. In the case before the Court, there is no evidence of actual fraud. *Winn v. Aleda Constr. Co.*, 227 Va. 304, 315 S.E.2d 193 (1984). There is no evidence of a false misrepresentation to the court to warrant a finding of constructive fraud. *Webb v. Webb*, 16 Va. App. 486, 491, 431 S.E.2d 55, 59 (1993). Collusion "implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose." *Black's Law Dictionary* 264 (6th ed.). Hence, since the Court has determined that the settlement documents are not inherently fraudulent, the Court cannot use those documents to determine as a matter of law that the parties to the previous lawsuit engaged in fraud. Moreover, the parties did not hide their agreement from the court. In fact, SunTrust saw and objected to the November order and the insurance companies refused to defend. This Court found that the judgment was reasonable. Thus, there was judicial oversight.

The *Eades* decision does offer some guidance to the court on the defendants' motions for summary judgment. The jury in *Eades* decided whether there was insurance coverage and whether there was collusion. *Id.* at 287. This Court cannot, based on the admissions and pleadings, decide if there was insurance coverage and cannot, based only on the documents, decide if there was collusion. The trier of fact must do that. There is a material issue of fact in dispute, and the Court cannot grant the motions for summary judgment for that reason.

## III. *Legal Obligation to Pay*

The defendants have also argued that they have no obligation to pay since Moore has not paid the judgments and is not obligated to pay pursuant to the settlement agreement. The plaintiff argues that the *Eades* decision deals directly with this issue. In *Eades*, "the plaintiff promised not to seek collection of the judgment." 248 Va. at 287. The *Eades* court did not address whether the plaintiff's promise meant that the defendant was not legally obligated to pay under the insurance policy. The Virginia Supreme Court's concern was whether the insurance company could attack the reasonableness of the stipulated judgment. *Id.* at 283.

The majority of jurisdictions have ruled that a "covenant not to execute is a contract and not a release [thus] tort liability on behalf of the insured still exists and the provider is still obligated to indemnify its insured." *Judicial*

*Approaches* at 858. For example, in *Red Giant*, mentioned previously, the Court concluded that the insured's tort liability remained and that the insured "would have a breach of contract remedy if Red Giant tried to collect on the judgment against him." 528 N.W.2d at 532. Thus, the insured was still legally obligated to pay under the terms of the insurance policy and the issue of coverage still remained. *Id.* at 533; *see Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982); *Metcalf v. Harford Accident & Indem. Co.*, 176 Neb. 468, 126 N.W.2d 471 (Neb. 1964).

Based on the November order, Moore is legally obligated to pay. The plaintiff has merely promised not to docket the judgment. The plaintiff may violate its contract with Moore and seek judgment. In any event, the judgment against Moore remains a legal obligation.

The Court is mindful that other jurisdictions have ruled to the contrary on similar facts. For example, in *Huffman v. Peerless Ins. Co.*, 17 N.C. App. 292, 193 S.E.2d 773 (N.C. 1973), the consent judgment required the plaintiffs to mark the judgment satisfied after they collected the insurance proceeds. *Id.* at 294. The Court ruled that the defendant was not legally obligated to pay damages and affirmed the trial court's grant of summary judgment. *Id.*; *see Stubblefield v. St. Paul Fire & Marine Ins. Co.*, 267 Ore. 397, 517 P.2d 262 (1973) (assignment to plaintiff of all sums in excess of $5,000 due was the limit of insured's obligation under insurance policy); *American Cas. Co. v. Griffith*, 107 Ga. App. 224, 129 S.E.2d 549 (1963) (loan note did not require defendant to pay).

This Court finds that there is a legal obligation to pay. The defendants still have the opportunity to defend on the issue of coverage. Twin City, Hartford, and Discover/Northbrook have admitted in their responsive pleadings that they were notified of the lawsuits and did not defend. SunTrust admits that Northbrook was notified of the lawsuits and did not defend. They all maintain that there was no obligation to defend or provide coverage because Moore did not qualify under any of the policies. If there was no coverage and the defendants properly refused to defend, then there is no liability. *Lerner v. Safeco*, 219 Va. 101, 104, 245 S.E.2d 249, 251 (1978). Under that scenario, the judgment against Moore remains intact, and Moore must rely on the plaintiff's promise not to execute the judgment against it.

## IV. *Statute of Repose*

SunTrust argues that the statute of repose, Virginia Code § 8.01-250, bars the plaintiff's claims since the construction of the separation wall occurred prior to May 1994 and this statute began to run from the time of construction. Thus, the plaintiff or Moore should have sued within five years of the date of the repair, May 1999.

Virginia Code § 8.01-250 provides in part:

No action to recover for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance of furnishing of such services and construction.

The plaintiff argues that the language "for contribution or indemnity for damages sustained as a result of such injury" is intended to cover contribution among joint tortfeasors in a tort action and does not apply to a breach of contract action. This Court agrees with the plaintiff's interpretation.

The statute of repose applies only to tort actions. The Virginia Supreme Court has recognized this interpretation in *School Bd. of Norfolk v. United States Gypsum*, 234 Va. 32, 38, 360 S.E.2d 325, 328 (1987) (dicta). Judge Everett Martin, Jr., has also ruled similarly in *BurgerBusters, Inc. v. Ratley Constr. Co.*, 45 Va. Cir. 133 (1998). In that case, Judge Martin noted that extended liability is not a problem between contracting parties because the statute of limitations is five years from breach. *See* Va. Code §§ 8.01-230, 8.01-246. Therefore, the General Assembly did not intend to provide protection to contracting parties but to those "associated with the construction of a building [who] would be exposed to long term liability absent a statute of repose." *Id.* at 135 (*citing Hess v. Snyder Hunt Corp.*, 240 Va. 49, 392 S.E.2d 817 (1990)). The Fourth Circuit Court of Appeals has also held this statute applies to tort actions. *See Delon Hampton & Assocs. v. Washington Metro. Area Transit Auth.*, 943 F.2d 355, 362 (4th Cir. 1991); *Fidelity and Deposit Co. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1162 (4th Cir. 1983).

The issue then is whether the claim against SunTrust is based on a contract. The plaintiff is alleging that SunTrust entered into a written contract with Moore to indemnify and hold it harmless for any liability as a result of the management of the property and breached that contract in 1999. The material issue in dispute is whether a contract existed and whether SunTrust breached that contract. There is no allegation of negligence that would bring this action within the scope of the statute of repose. Thus, the Court cannot grant the motion for summary judgment on this point.

In conclusion, the Court denies the Defendants' Motions for Summary Judgment.