COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Willis
Argued at Alexandria, Virginia


LISA HOGUE

MEMORANDUM OPINION[*] BY

v.        Record No. 3063-03-4                    JUDGE ROBERT P. FRANK
                                                  OCTOBER 5, 2004
ALEXANDRIA DEPARTMENT OF
 SOCIAL SERVICES


        FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                    Richard J. Jamborsky, Judge Designate

        Dale Warren Dover for appellant.

        Mary Elliott, Assistant City Attorney (Ignacio Pessoa, Assistant City
        Attorney, on brief), for appellee.

        Stephen F. Moller, Guardian *ad litem* for the infant children.


        Lisa Hogue's (appellant) parental rights were terminated pursuant to Code § 16.1-283(B)

and (C).  On appeal, she contends the trial court erred in (1) failing to rule the Interstate Compact on

the Placement of Children is unconstitutional; (2) not granting specific performance of a foster care

review order; and (3) finding the Alexandria Department of Social Services pursued reasonable

efforts to assist appellant in remedying the conditions which precipitated removal of the children

after the goal was changed from return to parent to placement with relative.   For the reasons stated,

we find no error and affirm the trial court's judgments.

                                    BACKGROUND

        LJ, L, and D, as well as their two older half sisters, lived in the home of appellant, their

mother, and Leroy Alexander (Alexander), the father of L, D and another child, J.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Appellant and Alexander had a history of drug abuse and domestic violence requiring intervention by Alexandria Department of Social Services. Alexandria Department of Social Services first sought and obtained child protective orders against appellant and Alexander in September of 1999 due to continued domestic violence and substance abuse issues in the home. The children remained in the home although problems of domestic violence and substance abuse continued.

LJ, L, and D initially came into the care of the Alexandria Department of Social Services on July 28, 2000 when preliminary removal orders were first entered due to "domestic violence in the home which severely affects the health and safety of the child." The preliminary orders were made final after adjudication on August 24, 2000. Finding the children to be abused and neglected, protective orders were entered by the Alexandria Juvenile and Domestic Relations District Court on the same date. The initial Foster Care Plans stated that the children were "present in the home during the domestic violence." Appellant and Alexander were ordered to "refrain from domestic violence incidents" with one another, to cooperate with Alexandria Department of Social Services, and to comply with various other requirements. The initial Foster Care Service Plan approved by the juvenile and domestic relations district court by order of October 2, 2000 described the services offered by Alexandria Department of Social Services, including substance abuse treatment, mental health services, referral to a shelter for appellant, home visits and home based services and counseling, visits with the children, and couple's counseling. The goal was "return to parent."

Domestic violence and substance abuse continued for both parents despite the various services and interventions by the Alexandria Department of Social Services and the Alexandria Juvenile and Domestic Relations District Court. On May 4, 2001, appellant gave birth to J, who was born with cocaine in her system. A preliminary child protective order was entered on May

11, 2001 ordering both parents to submit to random drug screens and to provide for the care of the infant.

On May 17, 2001, the juvenile and domestic relations district court entered an Emergency Removal Order after J was found in the home of appellant and Alexander during the execution of a search warrant for "suspected drug sales in the home." The court then entered an Adjudicatory Order on June 15, 2001 finding J to be abused and neglected. The Foster Care Plan for J, approved by the Alexandria Juvenile and Domestic Relations District Court by order of August 9, 2001, offered continued services to the appellant for substance abuse and mental health counseling, a referral to drug court and visitation. The goal was "return to parent."

On November 20, 2001, Alexandria Department of Social Services filed Foster Care Service Plans for LJ, L, and D changing the goal from "return to parent" to "Placement with Relatives." In the plan, Alexandria Department of Social Services indicated the children's safety continued to be an issue. Appellant had missed a number of substance abuse counseling sessions, missed a number of urine screens, and tested positive for an illegal substance on October 3, 2001. Appellant continued to "engage in an unhealthy relationship" with Alexander. Alexander had continued to physically abuse appellant, causing appellant to hide for her safety. Alexandria Department of Social Services also reported acts of violence by appellant against Alexander.

On December 18, 2001, the Alexandria Juvenile and Domestic Relations District Court approved the change of goal to "Placement with Relative" for L, D, and LJ. The orders state "custody of the child will be transferred to a relative other than the child's prior family, namely, as soon as the identified family members have been investigated and necessary agency approval has been received." A similar foster care order was then entered for J on March 4, 2002

changing the goal for her to "Placement with Relatives." A Permanency Plan ordering

"Placement with Relative" was entered on June 13, 2002.

It was reported that Geraldine Quinton, the paternal grandmother of L, D, and J, living on

the Eastern Shore of Maryland, was a potential placement for the children. A referral was made

under the Interstate Compact for the Placement of Children (ICPC) for the State of Maryland

Department of Social Services to conduct a home study to determine the suitability of placement

with Mrs. Quinton. Alexandria Department of Social Services pursued a potential placement of

LJ with an uncle.[1]

The Maryland Department of Social Services rejected placement of L, D, and J with Mrs.

Quinton.[2] The juvenile and domestic relations district court then entered a Foster Care Review

Order for J on December 11, 2002 disapproving placement with relatives and ordered Alexandria

Department of Social Services to submit a Permanency Plan. On December 19, 2002, similar

---

[1] Alexander was determined not to be the father of LJ. The uncle, the brother of Alexander, is the uncle of L, D, and J, but not biologically related to LJ.

[2] While the record does not disclose Maryland's basis of denial, Veronica Soler, an Alexandria Department of Social Services social worker, explained why Mrs. Quinton would not be an appropriate placement. She testified at the circuit court termination hearing:

> Mrs. Quinton works in Washington, D.C., and she lives in
> Wincomico County, Maryland, which is up by the Eastern Shore.
> She works two 24-hour shifts in D.C., I think it's Wednesday and
> Thursdays. She could not -- she tried. She could not get child care
> for these children for overnight child care, so she would not be
> able to supervise them for two days. She would not be able to get
> them to school, and there were no relatives in the area that were
> willing to assume that responsibility for her.

There was additional testimony that Mrs. Quinton had "inadequate resources to take on three children" and that Mrs. Quinton wanted only custody of the youngest child, J. Ms. Soler further testified that had the Alexandria Department of Social Services investigated Mrs. Quinton's situation, they would not have placed the children with her. The trial court found, as a fact, that the evidence did not support appellant's contention that Maryland denied placement because it did not want to provide financial assistance to Mrs. Quinton.

Foster Care Review Orders were entered for the other three children, each denying a foster care goal of placement with relatives because the State of Maryland rejected placement with Mrs. Quinton. In each case, the court ordered a Permanency Plan. In the orders pertaining to L and D, the court noted that Alexandria Department of Social Services needed to explore adoption and that "parental rights should be considered detrimental to the child's welfare." Appellant never appealed these orders changing goals.

The juvenile and domestic relations district court conducted a hearing on termination of appellant's parental rights on June 17-18, 2003. By Permanency Planning Order entered June 19, 2003, the goal of adoption was approved and appellant's parental rights were terminated. Termination orders were appealed to circuit court and by orders entered October 27, 2003, the circuit court terminated appellant's parental rights for all four children.

At the termination hearing, Ms. Soler testified that appellant never completed any of the services requested of her in any of the foster care plans. Alexandria Department of Social Services continued to provide services for appellant, but appellant "completely stopped participating in any services except visitation." Appellant discontinued her medications for depression. She was directed to enter a residential treatment program but failed to do so. Appellant told Soler in March of 2002 "she did not need anymore home based treatment" and that she stopped attending substance abuse services in April 2002 because "she didn't have a substance abuse problem." To the contrary, Ms. Soler testified those services were still needed.

While Soler admitted no new services were offered after the goal was changed to "placement with relative," appellant still "had the ability to get the services that we had originally offered her."

ANALYSIS

A. Constitutional Claims

Appellant challenges the Interstate Compact on the Placement of Children, Code §§ 63.2-1000 to 63.2-1105, asserting it violates the Commerce, Privileges and Immunities, Due Process, and Equal Protection Clauses of the United States Constitution. Her constitutional arguments are premised on her allegations that under the Compact, the State of Maryland denied placement with the children's paternal grandmother for financial reasons.

Appellee contends that any constitutional attack on the Compact in this appeal is an attempt to "revive the claims he should have made" in the December 19, 2002 hearing when the goal of placement with relative was changed. Essentially, appellee argues appellant now collaterally attacks a final decree that was not timely appealed. We agree.

Appellant maintains that because of the unconstitutional economic considerations applied by Maryland, the foster care plan enabling the children to live with the paternal grandmother was denied and the goal was changed to adoption. Nothing in the record reveals she made that argument at the foster care review hearings on December 11 or 19, 2002. Clearly, she did not appeal those orders to the circuit court.[3] Thus, the change in goal was a final order for purposes

---

[3]Appellant conceded at oral argument that the Foster Care Review Orders of December 11 and 19, 2002 are appealable orders. In fact, this Court has previously reviewed foster care review orders issued by trial courts in Richmond Dep't of Soc. Servs. v. Carter, 28 Va. App. 494, 507 S.E.2d 87 (1998), and Padilla v. Norfolk Div. of Social Servs., 22 Va. App. 643, 472 S.E.2d 648 (1996). However, appellant contended at oral argument that the December 2002 hearings were part of the same proceeding that resulted in the June 2003 orders terminating parental rights. She argued that the appeal of the termination orders effectively appealed the change in goal orders. We find nothing in the record to support this contention.

of appeal under Code § 16.1-296[4] because it concludes the issue of the status of the child and "leaves nothing to be done by the court." Hairfield v. Commonwealth, 7 Va. App. 649, 654, 376 S.E.2d 796, 799 (1989).

"A '[c]ollateral attack is allowed only where the judgment is void, a void judgment being a judgment rendered without jurisdiction.'" Commonwealth v. Holtz, 12 Va. App. 1151, 1154, 408 S.E.2d 561, 563 (1991) (Coleman, J., dissenting) (quoting State v. Kamalski, 429 A.2d 1315, 1320 (Del. Super. Ct. 1981)). See also Slaughter v. Commonwealth, 222 Va. 787, 793, 284 S.E.2d 824, 827 (1981) (cited in Fraser v. Commonwealth, 16 Va. App. 775, 777, 433 S.E.2d 37, 38 (1993)). Neither at trial, nor on appeal, did appellant allege the December 11 and 19, 2002 foster care review orders were void, or that the Alexandria Juvenile and Domestic Relations District Court had no jurisdiction to enter those orders. Here, appellant attempts to attack the constitutionality of the Compact, which simply provided part of the factual basis for the juvenile and domestic relations district court decision to change the goal of "Placement with Relatives" to "adoption." Under these circumstances, the constitutionality of the Compact should have been challenged by objecting to the admissibility of the Maryland decision. If appellant thought the juvenile and domestic relations district court erred, she had to appeal that order to the circuit

_____

[4]Code § 16.1-296 states in part:

> From any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken within 10 days from the entry of a final judgment, order or conviction. However, in a case arising under the Uniform Interstate Family Support Act (§ 20-88.32 et seq.), a party may take an appeal pursuant to this section within 30 days from entry of a final order or judgment. Protective orders issued pursuant to § 16.1-279.1 in cases of family abuse and orders entered pursuant to § 16.1-278.2 are final orders from which an appeal may be taken.

court.  The constitutional challenge raises a question of trial error, not jurisdiction.  See Parrish v. Jessee, 250 Va. 514, 464 S.E.2d 141 (1995).

"[T]he court has jurisdiction to err, as well as to correctly adjudicate the questions before it for decision, and the remedy to correct the errors of the court is solely by appeal."  Farant Inv. Corp. v. Francis, 138 Va. 417, 436, 122 S.E. 141, 147 (1924).  See also Kiser v. W. M. Ritter Lumber Co., 179 Va. 128, 136, 18 S.E.2d 319, 322 (1942).

Thus, we conclude that appellant's constitutional attack on the Compact is a collateral attack on, at best, a voidable judgment, and we will not entertain those arguments.

## B.  Specific Performance

Similarly, appellant argues that she is entitled to specific performance of an agreement embodied in the foster care review order which contemplated that her children be placed with Mrs. Quinton in Maryland.  Appellant reasons that she forfeited her rights to raise her children upon the promise by Alexandria Department of Social Services that the children would be placed with Mrs. Quinton.  Therefore, she argues that a legal contract existed between herself and Alexandria Department of Social Services which should be enforced by specific performance.

The essence of appellant's argument is that the juvenile and domestic relations district court judges violated appellant's agreement with Alexandria Department of Social Services when it denied the foster care review goal of "Placement with Relative."  Again, this argument is a collateral attack of the December 11 and 19, 2002 orders, and we reject this argument for the reasons stated above.

C. Reasonable Efforts

Finally, appellant contends Alexandria Department of Social Services did not pursue reasonable efforts to assist her in remedying the conditions which led to foster care placement.[5] While not challenging Alexandria Department of Social Services efforts when the goal was "return to parent," she complains that Alexandria Department of Social Services suspended or otherwise relaxed its efforts of assistance after the goal was changed to "Placement with Relative."

Whether or not Alexandria Department of Social Services pursued "reasonable efforts" to assist appellant is a factual determination to be made by the fact finder. Ferguson v. Stafford County Dep't of Social Services, 14 Va. App. 333, 417 S.E.2d 1 (1992). "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case." Id. at 338, 417 S.E.2d at 9. "Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. at 338, 417 S.E.2d at 9-10.

When addressing matters concerning the custody and care of a child, this Court's paramount consideration is the child's best interests. Toombs v. Lynchburg Div. of Social Services, 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982). On appeal, we presume that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). The trial court is vested with broad discretion in making decisions

---

[5] Code § 16.1-283(C) states a parent's rights may be terminated if:

> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"necessary to guard and to foster a child's best interests." Id. at 328, 387 S.E.2d at 795. We will not disturb a trial court's factual findings on appeal unless plainly wrong or without evidence to support them. Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004). However, "[c]onclusions unsupported by facts are insufficient to sever for all time the legal connection between parent and child." Ward v. Faw, 219 Va. 1120, 1125, 253 S.E.2d 658, 662 (1979).

Within this framework, we review the evidence in the light most favorable to the prevailing party below, the Alexandria Department of Social Services. Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989); Martin v. Pittsylvania County Dep't of Social Services, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court. Ferguson, 14 Va. App. at 336, 417 S.E.2d at 4.

Appellant's contention that Alexandria Department of Social Services "suspended or otherwise relaxed its efforts to rehabilitate" is not supported by the record. To the contrary, the record is replete with facts supporting the trial court's ruling that the appellant did not remedy the circumstances which led to the children's foster care placement notwithstanding the "reasonable and appropriate efforts" of the Alexandria Department of Social Services. See Code §16.1-283(C). Indeed, in the context of appellant's refusal to admit her drug dependency, her refusal to follow through with substance abuse and mental health counseling, her failure to accept home based services and her failure to cease the abusive relationship with Alexander, Alexandria Department of Social Services went to extraordinary efforts to offer remedial services before and after the goal was changed to "Placement with Relative."

- 10 -

Furthermore, the record demonstrates that LJ, L, and D had been in foster care for 17 months before the goal was changed to "Placement with Relative." J had been in foster care for 10 months. "The [termination] statute clearly contemplates that efforts to resolve the 'conditions' relevant to termination are constrained by time." Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities." Kaywood v. Halifax County Dep't of Social Services, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Appellant blamed Alexandria Department of Social Services for not providing services, not appreciating that she was responsible for the original removal of the children, the change of goal, and ultimately the termination of her parental rights. She clearly indicated, by word and deed, that she would not remedy the conditions that brought her children into foster care. The trial court properly concluded Alexandria Department of Social Services used "reasonable and appropriate efforts to assist appellant."

CONCLUSION

For the reasons stated above, we find that the trial court did not err in terminating appellant's parental rights. Accordingly, we affirm.

Affirmed.